IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JARTARUS WILKES, and<br>KRISTEN WILLIAMS,<br><br>   Plaintiffs,<br><br>v.<br><br>DANIEL FRANCESCO DE PINTO,<br>Individually,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:23-cv-00663<br>)   Judge Aleta A. Trauger<br>)<br>)<br>)<br>) |

## MEMORANDUM

In their First Amended Complaint ("FAC"), plaintiffs Jartarus Wilkes and Kristen Williams bring claims under 42 U.S.C. § 1983 against the defendant, a law enforcement officer employed by the Metropolitan Nashville Airport Authority ("MNAA"), alleging an illegal search and seizure in violation of their rights under the Fourth Amendment. (Doc. No. 24.)[1] Now before the court is Officer Daniel De Pinto's Motion to Dismiss the FAC, supported by a Memorandum of Law, in which De Pinto argues that his encounter with the plaintiffs never amounted to a "seizure" governed by the Fourth Amendment, that Williams consented to the search of her bag, and that, in any event, De Pinto is entitled to qualified immunity. (Doc. Nos. 25, 26.) The plaintiffs filed a Response in which they maintain that they have plausibly alleged facts supporting their

---

[1] The original pleading named De Pinto in his official and individual capacities, but the FAC sues him in his individual capacity only. Both the original Complaint and the FAC name the MNAA as a defendant. However, even before they filed the FAC, the plaintiffs filed a Notice of Voluntary Dismissal as to MNAA. (Doc. No. 21.) De Pinto, in his individual capacity, is therefore the only remaining defendant.

claims. (Doc. No. 27.) The defendant filed a Reply (Doc. No. 31), largely reprising the arguments in his initial Memorandum.

For the reasons set forth herein, the Motion to Dismiss will be granted in part and denied in part.

## I. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). The court must determine whether the complaint, viewed in that light, contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. FACTUAL ALLEGATIONS

Plaintiffs Wilkes and Williams are African American adult citizens and residents of Tennessee. (FAC ¶¶ 3–4.) Defendant De Pinto, as set forth above, is an MNAA officer. (*Id.* ¶ 5.)

On August 1, 2022, Wilkes and Williams flew into the Nashville Airport ("BNA") after a trip to California, where they had spent a few days in the Long Beach area attending an art show (related to Williams' business), shopping, and generally enjoying a vacation. (*Id.* ¶¶ 7–9, 13.) They arrived at BNA on a flight from Los Angeles around 11:37 p.m. and, after retrieving their luggage from baggage claim, proceeded to the ride-share area outside the terminal. (*Id.* ¶ 10.) While the plaintiffs were walking toward their Lyft ride, De Pinto and one other unknown MNAA officer, carrying clearly visible firearms on their service belts, "appeared" and asked both plaintiffs where they were returning from. (*Id.* ¶¶ 11–12.)

The FAC further describes the plaintiffs' encounter with De Pinto and the other officer as follows:

> 13. Defendant De Pinto and the other unknown officer also inquired of Plaintiff Wilkes about where they were arriving from in terms of the city of origin, what they were doing in Los Angeles, and how they usually bring "the dogs out" to do a search of passengers arriving from Los Angeles. Plaintiff Wilkes explained to one or more of the BNA officers they were arriving from Long Beach/Los Angeles on a business trip involving Plaintiff Williams.
>
> 14. Defendant De Pinto and the other unknown officer, without any reasonable suspicion or probable cause, demanded that Plaintiff Williams open her large black bag that she was rolling through the ride-share area of the BNA airport.
>
> 15. Plaintiff Williams, at that point feeling anxious, intimidated, scared, and nervous, complied with Defendant De Pinto's command to open her black suitcase in the parking area of the airport.
>
> 16. Plaintiff Williams squatted down, got on her knees, and opened the suitcase for Defendant De Pinto as a result of his instruction.
>
> 17. Defendant De Pinto examined the contents of the black suitcase that Plaintiff Williams opened up on the parking lot floor and found only clothes and jewelry the Plaintiffs had purchased in California.
>
> 18. When Plaintiff Williams showed Defendant De Pinto her undergarments that were contained in the black suitcase, he simply walked away without saying anything or offering an apology for the violation.
>
> 19. There was no illegal contraband either on the person or in the luggage of the Plaintiffs.

(FAC ¶¶ 13–19.)

Based on these facts, the plaintiffs claim that De Pinto violated their Fourth Amendment rights when he (1) "falsely detained Plaintiff Wilkes" and then (2) "falsely detained and searched Plaintiff Williams with no basis in law or fact." (FAC ¶ 22.) They seek compensatory and punitive damages under 42 U.S.C. § 1983.

## III.    ANALYSIS

De Pinto seeks dismissal of the claims against him under Rule 12(b)(6), for failure to state a claim for which relief may be granted, and he also asserts that he is entitled to qualified immunity. He argues generally that (1) the initial encounter with the plaintiffs, during which he simply asked

them a few questions, did not qualify as a detention implicating the Fourth Amendment; and (2) Williams consented to the search of her baggage.

### A. Legal Standards

#### 1. Seizures

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Regarding "seizures," the Sixth Circuit has stated that there are three kinds of "permissible encounters between the police and citizens" under the Fourth Amendment: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011) (quoting *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010)).

While "all seizures—including brief investigatory stops—receive [Fourth Amendment] protection," *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011), "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Florida v. Royer*, 460 U.S. 491, 497 (1983); *see also Illinois v. Lidster*, 540 U.S. 419, 425 (2004)). For that reason, "police questioning, by itself, is unlikely to result in a Fourth Amendment violation." *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984); *see also United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004) (observing that a police officer is free to ask a person for identification without implicating the Fourth Amendment).

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the

officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). This is a fact-based test. *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). "[A] consensual encounter becomes a seizure when 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

The Supreme Court has identified several circumstances that might indicate that a consensual encounter has become a seizure, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. 544, 554 (1980) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)) (other citations omitted); *see United States v. Carr*, 674 F.3d 570, 574 (6th Cir. 2012) ("When the officers asked Carr to exit the vehicle, the encounter transformed from voluntary to compulsory."); *United States v. Campbell*, 486 F.3d 949, 957 (6th Cir. 2007) (finding a voluntary encounter became a seizure when the police officer told the defendant that "he could be on his way just as soon as [the officer] ID'd him"). These factors are not exclusive, as the "test is necessarily imprecise, designed to access the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Chesternut*, 486 U.S. at 573. "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Id.*

    2.    Searches

Generally, a judicially issued warrant is required to conduct a search. *Harris v. Klare*, 902 F.3d 630, 638–39 (6th Cir. 2018). A warrant is not required, however, and no Fourth Amendment

violation occurs, if the individual "gives free and voluntary consent" to the search. *Beauchamp*, 659 F.3d at 571. The government bears the burden of proving that consent to search was given voluntarily. *Id.* (citation omitted). "Consent is voluntary when it is 'unequivocal, specific and intelligently given, uncontaminated by any duress or coercion.'" *Id.* (quoting *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008)). Like the question of whether police questioning has evolved into a seizure, voluntariness of consent is determined by examining "the totality of all the surrounding circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Relevant factors include, first, the "characteristics of the accused, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her constitutional rights." *Beauchamp*, 659 F.3d at 572. Second, courts are to consider "the details of the detention, including the length and nature of detention, the use of coercive or punishing conduct by the police, and indications of more subtle forms of coercion that might flaw [an individual's] judgment." *Id.* (alteration in original; internal quotation marks and citations omitted). The government's burden of showing that consent to search was given freely and voluntarily "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Harris*, 902 F.3d at 639 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968)).

   **B.**  **The Purported Seizure of the Plaintiffs**

  Both Wilkes and Williams claim to have been personally seized (or "falsely detained" (FAC ¶ 22)) for Fourth Amendment purposes when De Pinto and the other unidentified officer approached them and began asking them questions, without reasonable suspicion that the plaintiffs were involved in any illegal activity. (Doc. No. 27. at 4.)

  As set forth above, however, mere questioning by police, without more, does not constitute a "seizure" for which any degree of suspicion is required. None of the circumstances described by

the plaintiffs in the FAC suggest that the initial encounter between them and the MNAA officers was anything other than consensual, at least through De Pinto's questioning the plaintiffs about where they had flown in from, what they had been doing in Los Angeles, and even telling them that the officers "usually bring 'the dogs out to do a search of passengers arriving from Los Angeles." (FAC ¶ 13.) No dogs were present. In addition, there were only two officers, and they are not alleged to have surrounded the plaintiffs or to have blocked their ability to proceed on their way to their ride. Although the officers were armed, the plaintiffs do not allege that the weapons were drawn or even that the officers had their hands on their weapons. The officers did not touch the plaintiffs or remove them to a different location. The questioning took place in a public place, out in the open, apparently in view of the Lyft ride waiting for the plaintiffs.

      The facts, even viewed in the light most favorable to the plaintiffs, do not suggest coercion. Thus, at least up until the moment De Pinto "demanded" or "commanded" Williams to open her bag, no seizure had occurred. The plaintiffs appear to recognize as much, as their Response to the Motion to Dismiss focuses entirely on that event rather than the initial questioning, *per se*. The court finds, based on the authority set forth above, that any reasonable person in the plaintiffs' position would have believed that they were free to leave, such that no seizure occurred up through that point. *Accord Mendenhall*, 446 U.S. at 555 ("The respondent was not seized simply by reason of the fact that [DEA] agents approached her [in the airport], asked her if she would show them her ticket and identification, and posed to her a few questions."); *see also United States v. Garcia*, 866 F.2d 147, 150 (6th Cir. 1989) ("[T]he one occurrence which seems to distinguish 'seizures' from casual contacts between police and citizens is when the defendant is asked to accompany the police or agents to a place to which the defendant had not planned to go."). Wilkes, at least, clearly

was not subject to any seizure whatsoever, and the allegations in the FAC after paragraph 13 do not concern him at all.

The court finds that the FAC fails to state a claim on behalf of plaintiff Wilkes for a violation of his Fourth Amendment rights. Wilkes' claim is subject to dismissal in its entirety. Insofar as Williams' claims are based on this part of her encounter with De Pinto, it, too, is subject to dismissal.

### C. The Search of Williams' Luggage

As set forth above, the plaintiffs next allege that De Pinto "demanded" that Williams open her large rolling suitcase. (FAC ¶ 14.) Williams, feeling anxious and intimidated, complied with this "command" and, "as a result of [De Pinto's] instruction," "squatted down, got on her knees, and opened the suitcase for Defendant De Pinto." (*Id.* ¶¶ 15–17.) The question raised by these allegations is whether the consensual questioning ripened into a seizure and an unlawful search[2] as a result of De Pinto's "command" and his "instruction" as to how Williams should comply with that command.[3]

De Pinto, while recognizing that consent to a search must be "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion" (Doc. No. 26, at 9 (quoting *United*

---

[2] Notably, although neither party discusses this matter, it would appear that an unlawful search would also amount to an unreasonable seizure if there was no legitimate basis for extending the encounter.

[3] The plaintiffs assert in their Response to the Motion to Dismiss that the FAC makes it clear that De Pinto "commanded" Williams to "[squat] down, [get] on her knees, and [open] the suitcase for Defendant De Pinto as a result of his instruction." (Doc. No. 27, at 11 (citing FAC ¶ 16).) De Pinto asserts that this claim is not supported by the FAC. (*See* Doc. No. 31, at 4 ("Paragraph 16 says nothing about Williams being 'commanded' to do anything. Rather, Paragraph 16 simply states that 'Williams squatted down, got on her knees, and opened the suitcase for Defendant De Pinto as a result of his instruction.'" (quoting FAC ¶ 16)).) The court finds that, construing the FAC in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, Paragraph 16 may be read to mean that De Pinto instructed the plaintiff to stop where she was and open her bag for his inspection.

*States v. Bowser*, 505 F. App'x 522, 524 (6th Cir. 2012)), argues that Williams' "willingness to open her own bag cannot be equated with coercion" (*id.* at 10). He asserts that Williams' claim based on the search of her luggage fails as a matter of law, because she clearly gave "consent . . . by opening her suitcase without objection," and because she does not allege that De Pinto "threatened her, physically restrained her or prevented her from leaving, or drew a weapon." (*Id.*)

The law is clear, however, that there is a difference between a "request" and a "demand" or "command." *See United States v. Hinojosa*, 534 F. App'x 468, 471 (6th Cir. 2013) ("[T]he law distinguishes a mere request for identification from a command for the same." (citing *Campbell*, 486 F.3d at 956–57). A command, depending on the totality of the circumstances and the officer's tone of voice and demeanor, may objectively be considered to "convey a message that compliance with [his] request is required." *Bostick*, 501 U.S. at 437; *see also United States v. Davis*, 514 F.3d 596, 610 (6th Cir. 2008) (affirming the district court's ruling that an encounter was consensual where there was no evidence that the officer used the imperative "come here" in an intimidating or coercive manner).

At this stage in the proceedings, on the defendant's Motion to Dismiss, the court must accept as true the plaintiffs' allegations *and* draw all reasonable inferences in their favor. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (2016). Here, that means construing the words "command," "demand," and "intimidating" to mean that De Pinto did not merely request to inspect Williams' luggage and that a reasonable person in Williams' shoes would have understood that she had no choice but to obey De Pinto's "instruction" that she open her bag on the spot. Moreover, the *defendant* has the burden of establishing voluntary consent, and he cannot do so "by showing no more than acquiescence to a claim of lawful authority." *Harris*, 902 F.3d at 639 (quoting *Bumper*, 391 U.S. at 548–49). The defendant makes no pretense of suggesting that the

search was justified by any exception to the warrant requirement other than consent. The facts as alleged by the plaintiffs, if true, show that Williams did not voluntarily consent to the search and, instead, acquiesced to De Pinto's show of authority.

### D. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "No heightened pleading requirement applies" to the court's review of a motion to dismiss based on qualified immunity. *Courtright*, 839 F.3d at 518 (citations omitted). Thus, to survive a motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Id.* (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The plaintiff must allege with particularity "facts that demonstrate what each defendant did to violate the asserted constitutional right," *id.* (quoting *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011)), and the plaintiff bears the burden of showing that an officer is not entitled to qualified immunity, *id.*

In addition, although the Sixth Circuit recognizes that "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery," *Johnson*, 790 F.3d at 653, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). "Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* at 433–34 (internal marks and citations omitted).

De Pinto argues that he is entitled to qualified immunity, because the plaintiffs fail to show that he violated their Fourth Amendment rights. He is right only with respect to the plaintiffs' claim that the initial questioning constituted a seizure in violation their rights. As discussed above, the only claim to survive to this point is plaintiff Williams' claim that she was subjected to an unlawful search and attendant seizure. The question, then, is whether De Pinto's search of Williams' bag "violate[d] [a] clearly established statutory or constitutional right[] of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231.

Regarding that claim, De Pinto argues that he is entitled to qualified immunity "unless no reasonable officer in his position could have mistakenly believed that [Williams] consented" to the search when she "opened her bag." (Doc. No. 26, at 14 (quoting *Haywood v. Hough*, 811 F. App'x 952, 962–63 (6th Cir. 2020)). In response, the plaintiffs argue that, because qualified immunity is an affirmative defense, it is rarely appropriate to dismiss a case under Rule 12(b)(6) on the grounds of qualified immunity.

As set forth above, the court finds that the plaintiff has alleged facts that, if true, would permit a jury to find that she did not voluntarily consent to the search of her bag. However, that a reasonable jury could find in her favor "does not entail, of course, that a reasonable jury could find that no reasonable officer in [De Pinto's] position could be mistaken about that fact." *Harris*, 902 F.3d at 941; *see Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012))).

"When . . . a defendant raises qualified immunity as a defense . . . [t]he plaintiff has the burden of showing that a right is clearly established . . . [and] the defendant carries the burden of

showing that the challenged act was objectively reasonable in light of the law existing at the time." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (alterations in original) (quoting *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008)). To satisfy this burden, a defendant can rely on a reasonable mistake of fact, because "[q]ualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact." *Johnson*, 790 F.3d at 653.

The plaintiff has shown that she had a clearly established right to be free from coerced, warrantless searches at the time of the incident. To determine whether De Pinto can show that his conduct was objectively reasonable, the court must determine whether "the law at the time of the conduct" provided De Pinto with "fair notice that [his] conduct was unlawful." *Harris*, 902 F.3d at 642 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "Because 'it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts' in cases implicating the Fourth Amendment, [De Pinto] can only be denied qualified immunity if there is controlling precedent involving materially similar facts in which courts have found consent to be involuntarily given." *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). While the Supreme Court's precedent "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

The court finds, at this juncture, that De Pinto cannot establish that he is entitled to qualified immunity, because whether his conduct was objectively reasonable depends entirely on facts that have not yet been established. If, as the plaintiffs allege, De Pinto "demanded" that Williams open

her bag in a tone of voice that brooked no opposition and was reasonably understood to be an order rather than a request, as may be reasonably inferred from the plaintiffs' allegations, then his search of the bag was objectively unreasonable. The law at the time of the encounter was well established—and had been well established for decades—that, under the Fourth Amendment, searches "conducted without a warrant issued upon probable cause [are] *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Bustamonte*, 412 U.S. at 219 (1973). The "well-delineated exception" at issue here is consent. It has likewise long been the law that, if an officer obtains consent to search, a warrantless search does not offend the Constitution. *Davis v. United States*, 328 U.S. 582, 593-94 (1946); *Bustamonte*, 412 U.S. at 219. Such consent, however, must be voluntary and freely given. *Bumper*, 391 U.S. at 548 (1968). Consent is voluntary when it is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." *Beauchamp*, 659 F.3d at 571 (quoting *Moon*, 513 F.3d at 537). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Bustamonte*, 412 U.S. at 227. The law was also well established as of August 2022 that mere acquiescence to a claim of authority would not establish consent. *Bumper*, 391 U.S. at 548–49.

      This was not a tense, rapidly evolving situation in which De Pinto was required to make a "split-second judgment" of the type entitled to substantial deference. *Kisela*, 138 S. Ct. at 1152. Because the law was clear and because a reasonable jury could credit Williams and conclude that De Pinto did not merely request permission to search but instead "commanded" Williams to open her bag and submit to a search and, therefore, knew that the search was not one to which she voluntarily and freely consented, De Pinto is not entitled to qualified immunity with respect to Williams' claim that she was subjected to an unlawful search. While the facts, once developed,

might ultimately lead to a different conclusion, the Motion to Dismiss will be denied as to Williams' Fourth Amendment claim related to the search.

IV. **CONCLUSION**

For the reasons set forth herein, the Motion to Dismiss the FAC will be granted in part and denied in part. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge